*Bristow* for appellant.

---

CHANCERY.

*Case 134.*

# Pilcher, Assignee, *vs* the Banks, &c.

ERROR TO THE LOUISVILLE CHANCERY COURT.

*Bills of Exchange. Usury. Endorsers.*

September 23.

JUDGE SIMPSON delivered the opinion of the Court.—Judge Marshall did not sit in this case.

*The Banks are authorized by their charters to deal in bills of exchange, and the law has not fixed the rate of exchange, or limited the discount on bills purchased by them. It would be impracticable to do so.*

WE concur in opinion with the Chancellor, that there is no usury in the various transactions between the Banks and these parties. The Banks are authorized by their charters to deal in exchange. The law has not fixed the rate of exchange at which they shall deal, or limited the discount in the purchase of bills by them, and from the very nature of this traffic, such limitations are wholly impracticable. The value of negotiable securities of all kinds must depend on many circumstances. Time, and place of payment, and the condition of the business operations of the country, all have their influence. Immense sums of money pass from one point to another in the shape of bills of exchange, and their value, from a thousand circumstances, must necessarily vary. The purchase of them is a mercantile operation of constant occurrence, and of vast importance, indispensibly necessary to the existence of commerce, and the encour-

agement of trade and enterprize, and should not there-fore be laid under any unnecessary restrictions.

A loan of money under color of buying a bill of exchange, upon which more interest than six per cent. per annum is taken, would no doubt be usurious. But there is a clear and well recognized distinction between a sale of a security and a loan of money. In any transaction on bills of exchange, the true test of its nature is determined by ascertaining whether it be actually a sale, or whether it assumes the appearance and character of a sale merely to cover an usurious loan. The question of usury is sometimes made to depend upon the attitude of the party on the bill who brings it into market, but this should be regarded only important, so far as it tends to illustrate the true nature of the transaction.

Some of the Banks charged a larger premium, by way of exchange on bills payable at four months, than they did on two months bills, and it is contended that this is of itself conclusive evidence of usury. The argument is, that exchange has no reference to the time, but only the place of payment. That interest is taken for the time, and regulated by it, but exchange should be the same whether a bill has a long or a short time to run. As the exchange on a bill is the difference in the relative value of money at different places, this reasoning would have some plausibility if applied to a bill of exchange payable in a country where the business and the money market are stable, and their condition at a future day could be calculated on with some certainty. But here the changes and fluctuations in the money market and in exchange are frequent, and their extent uncertain. The more distant the time, the greater the uncertainty. And as the hazard is increased by postponing the day of payment, an increase of the premium adequate to the additional risk, is naturally and properly demanded. These are matters, moreover, that have to be regulated by the current value of the various description of bills at the time they are brought into market, and are properly left to the discretion of the parties concerned in the transaction.

PILCHER, AS'EE,
vs
THE BANKS, &C.

—But a loan of money, however, under pretext of buying a bill of exchange in which more than legal interest was charged, would be usurious.

Banks may buy bills of exchange for less or more, proportioned to the time they have to run, and the risk to be incurred by the fluctuation of the money market, without being guilty of usury.

But it is alledged that bills of exchange were purchased by the Banks with an understanding that they were to be paid when due, at the Banks, and not at the place where they were made payable, and that other bills were to be purchased, and the proceeds applied to the payment of the first, a premium by way of exchange, to be taken on all of them. Such an arrangement, had it been made, would have been a mere contrivance to evade the statute, and clearly usurious. But it is denied positively, and no proof is adduced in support of the charge. Upon a careful examination of the evidence, we are of opinion, that the bills were all purchased by the Banks, in the usual course of business, in good faith, and that the dealings between the parties were not tainted with usury.

Some of the bills purchased by the Banks not having been paid at New Orleans, where they were made payable, the liability of the parties was decided by the Chancellor to be, not the amount of the bills, but the amount paid for them by the Banks, with interest on that amount, thereby imposing on the Banks the loss of the exchange charged and received by them. The propriety of that decision is now to be considered.

The general rule is, that the holder may recover the sum for which the bill is payable, with interest, and in certain cases, such expenses as may have been occasioned by its having been dishonored. (*Smith's Mercantile Law, side page* 215; *Chitty on Bills*, 419.) The engagement of the drawer of every bill is, that it shall be paid at the time and place designated, and if it be not, the holder is entitled to indemnity for the loss arising from this breach of contract. The General Law Merchant of Europe authorizes the holder of a protested bill, immediately to redraw from the place where the bill was payable on the drawer, in order to reimburse himself for the principle of the bill protested, the contingent expenses attending it, and the re-exchange which he pays. His indemnity requires him to draw for such an amount as will make good the face of the bill, together with interest, and the necessary charges and expenses, and the current rate of exchange, where the bill was payable on the place where it was negotiated. It is not necessary to fix

*Holders of bills of exchange which have been dishonored, may receive the amount of the bill and interest, and in some cases the expenses incident to the dishonor, (Smith's Mer. Law, 215; Chitty on Bills, 419,) which according to the mercantile law of Europe, includes interest, costs of protest and premium, and re-exchange paid, (3 Kent's Com. 316)*

the liability of the parties, that he should draw a bill for this purpose; their liability being the same as if it had been actually done: (3 *Kent's Com.*, 116.) The endorser, it is true, when sued by the endorsee, may inquire into the actual consideration between themselves, and is only responsible to the extent of that consideration, whatever it may be. But as it regards the other parties to the bill, they are liable to the holder for its full amount. No reason is perceived why this rule should be varied when applied to the Banks. A different rule might, as suggested by the Chancellor, have a tendency to suppress the sale of fictitious bills.' But it might, on the other hand, lead to a breach of good faith, and a violation of those contracts where punctuality is of vital consequence to the commercial business of the country. Let it be decided that a bill held by the Banks, and made payable at a distant point, upon the purchase of which exchange has been deducted, can be discharged at home by the payment of a sum less than it calls for, and a strong temptation to the violation of contracts is at once presented, and a premium in effect offered to the practice of dishonesty. If a Bank or an individual were to purchase a fictitious bill, knowing that such was its character; that it was made merely for the purpose of borrowing money, and would be returned unpaid, discounting exchange. as well as interest thereon, then it is true the purchase could not be regarded as having been made in good faith, but would be considered as usurious, and the purchaser would not be entitled to the full amount of the bill. There is, however, no evidence that such was the fact in relation to these bills.

With a view to the advancement of commercial intercourse, a bill of exchange should be taken according to its natural tenor and effect, as appearing on the face of it, without requiring the purchaser to institute an inquiry into the true nature of its origin, or the object of the parties in making it. No unnecessary obstacle should be placed in the way of the purchase of bills of exchange by the Banks. The exercise of this power is necessary to their very existance. The business of the country extending itself as it does, into several States, local Banks,

PILCHER, AS'EE.
*vs*
THE BANKS, &c.

As between endorser and endorsee, the real consideration may be inquired into, and that be a measure of recovery in case of dishonor; but the other parties to the bill are liable for its full amount. Banks, as holders, have the same right as an individual.

The interest of commerce requires that bills of exchange should be taken according to the obvious import without requiring an inquiry into the object of the makers.

to sustain themselves, must have funds at those points where they are required by commercial operations, otherwise a drain of their specie necessarily occurs, and their usefulness is destroyed, if their existance itself be not jeopardized. To create these funds they must have power to deal in exchange. The payment of a bill at the place designated, is consequently of more importance to them in the general, than the exchange received by them. So important has punctuality in the payment of foreign bills of exchange been regarded, that in this country damages in the place of re-exchange are allowed in nearly all the States, and were at one time in this State, on their being returned protested for non-acceptance or non-payment. We are, therefore, of opinion that the Banks were entitled to the full amount of the bills returned unpaid, and that the decree of the Chancellor requiring the amount that had been received as exchange on them to be refunded, is erroneous.

The decree in relation to the other matters decided being correct, is affirmed on the original errors, but on the cross errors assigned by the Banks, it is reversed, and cause remanded for a decree as herein indicated.

*Pilcher, Duncan and Woolley* for plaintiff; *Pirtle, Thruston and Guthrie* for defendants.