## SOUTHERN BANK OF KENTUCKY v. GASSAWAY BRASHEARS AND JAMES H. LAWS, PARTNERS, ETC.

1. The true test of usury is, whether a party secures to himself, *at all events*, a return of the principal, with more than the *legal interest* by way of profit. If loss, expense, and delay, be *expected* to occur, so as to reduce the interest, an allowance may be made for them, and it will not be usurious, even though it result in greater profit than lawful interest.

2. The reason why the addition of the current rate of exchange to the legal rate of interest does not constitute usury is, that the former is a just and lawful compensation for receiving payment, at a place where the money is expected to be less valuable than at a place where it is advanced and lent; and this reason exists where the lender discounts the drawer's bill, as well as when he buys a bill, in the market, of the payee.

3. A bill of exchange is not deprived of the character of a bill by the fact of its being payable at the place where drawn. It is the form of the instrument which gives it character, and not the intention to transmit funds from one place to another.

4. A bill of exchange, with a view to the advancement of commercial

intercourse, should be taken according to its natural tenor and effect, as appearing on the face of it, without requiring the purchaser to institute an inquiry into the true nature of its origin, or the object of the parties in making it.

5. Where the charter of a foreign bank provides that the business of the bank shall be "to lend money, discount promissory notes and bills, and deal in exchange;" and "that said bank shall not contract for, or receive, a greater rate of interest than six per cent. per annum for the loan or forbearance of money; and interest on promissory notes, negotiable and payable at said bank, and there discounted, shall be calculated on the time such notes have to run, including three days grace, and shall be paid in advance, and on banking principles, in conformity with Rowlett's tables of discount and interest,"—it is not usury for the bank to receive a bill of exchange from the drawer, payable at another place, and to deduct therefrom interest at the legal rate, together with the usual and customary deduction of exchange between those points.

6. Such a transaction is not a loan of money, but is a dealing in exchange, authorized by such charter.

SPECIAL TERM.—Action upon a bill of exchange.

The facts sufficiently appear in the decision.

*Taft, Key & Perry*, for plaintiff.

*Tilden, Rairden & Curwen*, for defendants.

SPENCER, J.   This is an action upon a bill of exchange, drawn by Mark Buckingham upon the defendants, G. Brashears & Co., in favor of, and payable to the order of, the plaintiffs, dated November 9, 1853, for the payment of $4,053.12, in ninety days.   The bill is dated at Cincinnati, and is addressed to the defendants at Cincinnati, and is there payable; it was accepted by defendants, and dishonored at maturity.   The plaintiffs having made out a *prima facie* case, are entitled to recover the amount of the bill, with interest, unless barred by the facts set up in defense. They are as follows :

On June 25, 1853, Raper, Cox & Co. drew a bill of exchange upon Mark Buckingham, dated at Cincinnati, and addressed to Buckingham at Cincinnati, whereby they requested the latter, in four months after date, to pay to the

order of themselves $3,984.34, at Ohio Life Insurance and Trust Company Bank, in Cincinnati, for value received; which bill was accepted by Buckingham, and, being indorsed by Raper, Cox & Co., was sent by them to the Southern Bank of Kentucky, at their banking house in Carrollton, Kentucky, and by the latter purchased, or discounted, taking out therefrom $120.18; and paying over to the order of Raper, Cox & Co. the sum of $3,864.16, as the net proceeds; of the sum taken out, $80.34 was charged as interest, at the rate of six per cent. per annum, or one per cent. for every sixty days, and $39.84 for exchange between Carrollton and Cincinnati, being at the rate of one per cent. The acceptance by Buckingham was made, *in fact*, for the mere accommodation of Raper, Cox & Co. Before the bill matured, Raper, Cox & Co. failed, and assigned and transferred all their assets to Buckingham, to indemnify him against his liabilities on their account. A portion of the stock was in the hands of the present defendants, for sale, as auctioneers, at the time when the bill in suit was drawn. On the day appointed for sale, the plaintiff brought suit upon the original bill against the parties to it, and was about to attach the property to be sold; to avoid which the bill in suit, drawn by Buckingham upon Brashears & Laws, was made and accepted—being for the amount of principal and interest on the original bill, adding interest for the time the substituted bill had to run—the defendants to retain indemnity out of the sales made.

It is claimed on the part of the defendants, that the discount, or purchase of the original bill, was made in violation of the plaintiff's charter, which limits it in the discount of bills and notes, to charge by way of interest at the rate of one per cent. only for every sixty days; whereas, in the present instance, interest was not only charged at that rate, but an additional sum of one per cent. was charged as interest, or for forbearance in fact, under color of exchange; that being in violation of the plaintiff's charter, the purchase was void; and the plaintiff, having no claim upon

the original bill, can have none upon that which has been substituted for it, the latter being given without consideration.

Assuming that the plaintiff's right upon the original bill is to be determined solely by the law of their incorporation, and that such law has been violated in the transaction, upon which the right is founded, by the taking of more than six per cent. interest on the purchase, or for a loan of money, it is undoubtedly true that such right, or claim, is wholly groundless, for want of power or capacity in the plaintiff to make the purchase. 8 Ohio, 280, *Bank of Chillicothe* v. *Swayne, et al.*; 2 Pet. 527, *Bank U. S.* v. *Owens;* 7 B. Monroe, 548, *Pilcher* v. *The Banks*. It is equally true that if the plaintiff had no right of action upon the original bill, they can have none upon its substitute from want of consideration. 4 McLean, 250, *Orr* v. *Lacy;* 3 How. U. S. 71, *Walker* v. *Bank of Washington;* see also 2 Conn. 280, *Botsford* v. *Sanford.*

Had the plaintiff, then, any authority, by the charter, to make the contract involved in the purchase of this bill? By section 2 of the charter, it is provided that the business of the bank shall be " to lend money, discount promissory notes and bills, and deal in exchange." Whether the contract under consideration be regarded as the discount of a bill, or as a purchase of exchange, or as a mere loan of money, it would be equally authorized under this section of the charter, at whatever rate the loan, discount, or purchase, might have been made. But section 23 of the charter provides "that said bank shall not contract for, or receive, a greater rate of interest than six per cent. per annum for the loan or forbearance of money; and interest on promissory notes, negotiable and payable at said bank, and there discounted, shall be calculated on the time such notes have to run, including three days of grace, and shall be paid in advance, and on banking principles, in conformity with Rowlett's tables of discount and interest "— i. e., at the rate of one per cent. for every sixty days.

It will be seen that this section of the charter makes no

allusion to the purchase, or discount of bills of exchange, or of promissory notes, payable elsewhere than at the bank itself. As to these, no limit, or rate, seems to be prescribed, unless they come within the class of "loans of money." It seems to me, also, that the loans here referred to are of those sums which are expected to be returned to the bank, at the place where and by the person to whom loaned; and hence the allusion, in the latter part of this section, to notes payable at the bank, and the phrase is used, as in section 2, in contradistinction to "dealing in exchange;" so that it would be a legitimate transaction to purchase or discount a note, or bill, payable elsewhere than at the bank, which involved the operation of an exchange of money, though more was charged in the purchase, or discount, than would amount to interest at the rate of six per cent.; provided, that it was a fair charge for the difference of exchange, and was not a mere cover, or shift, to exact more than the interest allowed. In the present case, therefore, though the bill were, in fact, executed by Buckingham for the accommodation of the drawers, and it was so known to the plaintiff at the time of the discount, yet if it were expected, as between the parties, that it would be paid at maturity at Cincinnati, where payable, the plaintiff had a right to charge, in addition to interest, the fair rate of exchange between the place of discount and the place of payment, upon a bill of that description. The ground of distinction between a bill, or note, payable at the place where discounted, and one payable at a distant point, is obvious enough. In the former case, no operation whatever of exchange is performed—no risk, or expense, or delay, in the collection and transmission of the fund, is incurred, whereby loss, or diminution, in the amount of the interest, is either hazarded, or sustained. In the latter case, all of these have to be encountered, and should be provided for; and the law allows a suitable compensation. Whether the bill, or note, be, in fact, an accommodation, or a business transaction, in that respect, makes no difference, the elements of charge for exchange remain the same; that is, in either

case there is the same risk, the same delay, and the same expense, in the collection and in the transmission of the funds. The true test of a usurious law is, whether a party secures to himself, at all events, a return of the principal, with more than the legal interest by way of profit. If loss, and expense, and delay, be expected to occur, so as to reduce the interest, an allowance may be made for them, and it will not be usurious, even though it result in greater profit than lawful interest.

What is reasonable, in such cases, is best determined by the experience of mankind, which, in monetary and commercial affairs, is generally exhibited in the usages of trade; hence it is, in cases of this description, where the question has arisen whether the purchase of a bill was usurious or not, it has been determined by the consideration whether the rate of exchange charged, in addition to interest, was usual, or not, in bills of the like sort. If usual, it would be wholly unsafe to go into the field of speculation, and determine that the rate charged was unreasonable, and, therefore, a mere cover for usury, merely because the usage might seem arbitrary, or the reasons which induced it should not be fully apparent.

In 13 How. 172, *Buckingham* v. *McLean*, the principles I have above advanced seem to be fully sustained. That was a case of a bill, or bills, of exchange, drawn in Cincinnati upon New Orleans, payable on time, discounted by a bank in Cincinnati, for the benefit of the drawee, at interest off, and from one to one and a half per cent. exchange, which was admitted to be the customary rate on time-bills, although sight-exchange was at par, or, perhaps, at a premium. The court says: "It is no proof of usury that the bank did not take the market rates on sight-bills which they did not discount, if they took only the market rates on those they did discount. It was also insisted that the bank did not buy these bills, but were the first takers for loans of money made to the drawers; but we are unable to perceive how the fact that the banks were the first takers, can be of any importance in the case,

nor do we deem it material that these bills were discounted for the drawers. The reason why the addition of the current rate of exchange to the legal rate of interest does not constitute usury is, that the former is a just and lawful compensation for receiving payment at a place where the money is expected to be less valuable than at the place where it is advanced and lent; and this reason exists when the lender discounts the drawer's bill, as well as when he buys a bill in the market of the payee. In neither case is it usury to take the regular and customary compensation for the loss in value by change of place of payment. The contract is not unlawful, unless more than six per cent. has been taken, or reserved for interest—not if taken for a change in the place of payment; and in determining whether the excess over six per cent. has been reserved for interest, or as a just compensation for changing the place of payment, the customary, or the market value of this change, is evidence of the real intent of the parties, and so evidence of the validity of the contract."

So here, though this bill be accepted for the accommodation of the drawer, the purchaser has a right to suppose it will be paid, if need be, at maturity, for his accommodation, at the place named for payment; if such be his reasonable expectation, the charge for difference in the place of payment is not less reasonable and proper than if the bill had been a business transaction. To this effect is 7 B. Mon. 551, *Pilcher* v. *The Banks*, where the court says: "If the bank were to purchase a fictitious bill, knowing that such was its character; that it was made merely for the purpose of borrowing money, and would be returned unpaid, discounting interest, as well as exchange thereon, then the purchase would not be regarded as in good faith, but would be considered usurious." But why usurious? Because a charge is made for difference in the place of payment, when no such payment is expected; but in the case under consideration, all the parties to the bill lived at or near the place of payment, and there could be, and was, no reasonable expectation of payment anywhere

else.   Also, would not payment, in all probability, be asked, and enforced here?

But suppose I err in this view of the subject, is it clearly apparent that the plaintiff knew the real character of this transaction; i. e., that the bill was created for the purpose of raising money?

1. There is nothing in the form of the bill itself, which furnishes any indication that it is not what it purports to be, a debt from the acceptor to the drawer.   The fact that it is drawn in Cincinnati, and payable there, does not deprive it of the character of a bill of exchange.   It is the form of the instrument which gives it character, and not the intention to transmit funds from one place to another; although such is one of its most useful offices.   So it was held in 2 Cro. Mees. & Ros. 468, *Amner* v. *Clark*, that a bill of exchange, drawn in London upon a merchant in Brussels, payable in London, and accepted, so payable, was an inland bill of exchange, and yet it purported to transfer no funds from one place to another, being payable in the place where drawn.

2. It is in evidence that it is not unusual for mercantile operations here to assume the form of a bill of exchange, when the paper is intended to be offered for sale or discount in any of the Kentucky banks, and we have pretty significant evidence of the fact in the drawing of the very bill now in suit.

3. It is stated by Crawford, cashier of the bank, that when the bill was presented for discount, it was represented as a business transaction, and that the bill was, in fact, discounted under the supposition that such was its character.

In opposition to this, the only evidence is that of Judge Hall and Mr. Langdon, who express their opinion, as experts, that the bill is a kite, made for the purpose of raising money; while Gilmore, and Ernst, and Messick, who are probably equally familiar with such paper, pronounce it genuine, or real, that is, judging from its appearance only.

Giving all due weight to the opinion of such men as Hall and Langdon, it proves nothing more than that the bill may

or may not have been a *kite*. If doubtful whether it were so, the legal effect of the transaction ought to prevail, if for no other reason, on grounds of public policy. It would materially impair the usefulness of such paper, and expose it to unnecessary burdens, if every purchaser were bound to inquire into the facts upon which it was founded. Upon this subject it is well said, by the learned judge, in the case above referred to, of *Pilcher* v. *The Banks*, p. 551: "With a view to the advancement of commercial intercourse, a bill of exchange should be taken according to its natural tenor and effect, as appearing on the face of it, without requiring the purchaser to institute an inquiry-into the true nature of its origin, or the object of the parties in making it," etc.

But the inquiry still remains, whatever the character of this bill may have been, or may have seemed to be: was it purchased in good faith, by the plaintiff, as a bill of exchange, and was the extra charge of one per cent. made upon it as a difference of exchange, or was it a mere cover to unlawful interest?

1. It may be remarked that the transaction purports, on its face, to be the purchase of a bill of exchange, and not a mere loan of money. Interest is charged upon it, at the rate of six per cent., and a charge for exchange is separately made. It is not in form of a loan, because the money is not to be repaid by the drawer, but by a third party.

2. The charge for exchange was a usual and reasonable charge in like cases, and is therefore consistent with the outward appearance of the transaction. All the witnesses, except Langdon, testify that, on time bills, having from sixty to one hundred and twenty days to run, drawn within the space of one hundred miles, one per cent. exchange is a usual and customary, if not invariable, charge. In Kentucky it is a uniform charge, between whatever points drawn, whether from a country town upon this city, or *vice versa*, and more was not taken in the present case.

3. However it may be elsewhere, it is in proof that the rate of exchange on such bills, at Carrollton or Cincinnati, is one

per cent.   Crawford swears to this, and he is the only one of all the witnesses who does or can testify to the actual rate between those two points.   Now, it may be true, as a general thing, that sight exchange is in favor of Cincinnati, as between it and the adjacent towns; but, unless there be a demand for it at the maturity of a bill, it is manifest that the bank owning the bill may have to keep it a considerable time on deposit, at the risk of both principal and interest, or call for its return, at an expense of a premium equal, according to the testimony of Bishop, in some cases, to the amount of the exchange charged.   No bank, therefore, which had not a constant and steady demand for sight exchange on Cincinnati, could afford to buy time bills on Cincinnati, without charge for exchange.

Lastly, the application was not in form for a loan of money, to be repaid by the borrower, but to dispose of a bill for the benefit of the drawer; and there was no previous or subsequent conversation between the parties, going to show, in anywise, that the parties contemplated any act different from the apparent nature of the transaction.   Under these circumstances, I feel it would be wholly unsafe to hold this a corrupt agreement between the parties, when neither of them seems to have so regarded it, and when it is perfectly consistent with commercial usage, or the fair transfer of commercial paper.

Having decided this transaction to be dealing in exchange, within section 2 of the charter of the bank, and not a mere loan of money within section 23, I do not deem it necessary to consider whether the contract is to be construed by the laws of Kentucky or by those of Ohio, since, in either case, it would be held equally valid.

The law of March 19, 1850, 2 Curwen, 1524, which prohibits banking institutions from charging more than one-fourth of one per cent. for exchange, in addition to interest upon the purchase of bills payable at any place within this State, is confined, in its terms, to banking institutions within this State, and, of course, does not apply to the plaintiff,

whose business is conducted without this State, and who, without the State, made the purchase in the present case.

As the plaintiff, then, had, in my opinion, a just right to enforce payment of the original bill, they are clearly entitled to enforce payment of its substitute.

Judgment, therefore, will be entered in favor of the plaintiff, for the amount of the bill in suit, with interest, from its maturity to the first day of the present term.

Judgment for plaintiff.